UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE PALMER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HSBC BANK, USA, N.A., <br><br> Defendant. | Case No. 22-cv-02178-VC <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 144 |

The motion for summary judgment is granted. This ruling assumes that the reader is familiar with the record and the arguments made by both parties.

1. *Standing*. Mrs. Palmer suggests that she lacks standing, and so the Court should remand the case to state court. Judge Corley previously held that Mr. Palmer had standing based on the Ninth Circuit's opinion in *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 490 (9th Cir. 2019). Dkt. No. 44. Mrs. Palmer argues that the Supreme Court's intervening decision in *TransUnion v. Ramirez* calls that analysis into question. 141 S. Ct. 2190 (2021). But *TransUnion* is easily distinguishable: there, the Court held that certain plaintiffs had not suffered any concrete harm—and therefore lacked standing—because their false credit files were not disseminated to any third party. *Id.* at 2209–13. Here, in contrast, Mr. Palmer's personal information was shared with HSBC (and Mrs. Palmer is pursuing Mr. Palmer's cause of action following his passing). That harm is sufficient to establish standing. *See Nayab*, 942 F.3d at 491.

2. *Additional Discovery*. In her original briefing, Mrs. Palmer argued that the Court

should defer ruling on the motion for summary judgment so that she could conduct additional discovery. In response, the Court allowed Mrs. Palmer to depose a representative of HSBC. Dkt. No. 158. Mrs. Palmer now argues that she needs more discovery.

A court may defer ruling on a motion for summary judgment if the non-moving party "shows by affidavit or declaration, for specified reasons, it cannot present facts essential" to oppose summary judgment. Fed. R. Civ. P. 56(d). To justify deferring a ruling, "the evidence sought must be more than 'the object of pure speculation.'" *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (quoting *California v. Campbell*, 138 F.3d 772, 779–80 (9th Cir. 1998)). Mrs. Palmer has not met that burden here: there is no reason to think that the documents or testimony she seeks would preclude summary judgment by contradicting all the evidence adduced thus far. The request for additional discovery is therefore denied.

3. *FCRA Claim.* HSBC seeks summary judgment on the ground that it did not violate the Fair Credit Reporting Act because it accessed Mr. Palmer's information in connection with a "firm offer of credit." 15 U.S.C. § 1681b(c)(1). Mrs. Palmer argues that the mailer was not a firm offer of credit for at least four reasons.

First, Mrs. Palmer points out that HSBC did not extend an offer of credit to all the consumers it solicited: HSBC only approved 59% of consumers who responded to the mailer. But under the FCRA, "a creditor must honor a firm offer of credit only if, based on information in the consumer report, the application, or other information bearing on credit worthiness, the consumer meets the criteria initially used to select that consumer for the offer." *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 840 (5th Cir. 2004). For instance, the creditor may confirm that the consumer's credit score hasn't changed since the initial solicitation. If it has, the creditor may reject the consumer's application—without violating the FCRA.

2

That is what HSBC did here. *See* Dkt. No. 144-2 at 19 (mailer indicating that "this 'prescreened' offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria."); Dkt. No. 163-2 at 23 ("We don't change the criteria when someone applies. So whatever criteria [we used to pick people], that's the criteria that goes into the decision engine, that when someone applies, we're screening them against.").[1]

Palmer points to *Sosa v. Cashcall*, a California Supreme Court case analyzing California's analogous CCRA, to argue that summary judgment should be denied because there is a "triable issue of material fact" as to "whether [HSBC] intended to honor the proposed loan terms" in its offer. 49 Cal. App. 5th 42, 45 (2020). But in *Sosa* there was "no evidence" of the lenders' intent: "Significantly, [the lenders] did not provide a declaration from anyone employed by LoanMe or Cashcall who expressly stated that all qualified acceptances would have been honored." *Id.* at 49. Here, in contrast, HSBC has provided evidence that it honored the offers made to the consumers who met its criteria. *See, e.g.,* Dkt. No. 164-2 at 24–26.

Mrs. Palmer next suggests that HSBC improperly used Mr. Palmer's information in connection with unrelated targeted marketing and data mining, undermining the notion that the information was pulled in connection with a "firm offer." But Mrs. Palmer has not offered any evidence to support that claim: HSBC's witness testified that Mr. Palmer's personal information was used solely to make him an offer of credit, not for any unrelated advertising. *See* Dkt. No. 164-2 at 19, 56. HSBC admits that it performed an internal analysis to determine the response rate to the mailer, but Mrs. Palmer has not cited any case law suggesting that that act violates the FCRA.

---

[1] All pages cited reference the pages as numbered by ECF.

Mrs. Palmer next argues that the mailer was not a firm offer because HSBC sent different offers to different consumers. *See* Dkt. No. 163-2 at 17 (explaining that HSBC sent some consumers an offer for a gold card and some consumers an offer for a cash back card, depending on the consumers' "propensity" for selecting one or the other). Mrs. Palmer has not explained why that distinction matters: so long as HSBC intended to honor the offers, it doesn't matter whether it sent out offers for a gold card or a cash back card.

Finally, Mrs. Palmer argues that HSBC pulled more personal information than necessary to determine whether its criteria were met. Mrs. Palmer has not explained why the contact information, credit score, and (possibly) social security number go beyond what was necessary for HSBC's firm offer process.

**IT IS SO ORDERED.**

Dated: January 18, 2023

VINCE CHHABRIA
United States District Judge